**Melvin STRAIGHT, Appellant**

**v.**

**The STATE of Texas, Appellee**

**NO. 14–15–00801–CR**

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed February 16, 2017.

Discretionary Review Refused May 17, 2017

Patrick McCann, Houston, TX, for Appellant.

Jessica Alane Caird, Houston, TX, for State.

Panel consists of Justices Christopher, Jamison, and Donovan.

## OPINION

Martha Hill Jamison, Justice

Appellant Melvin Straight challenges his conviction for evading arrest, complaining in four issues that the trial court erred in paraphrasing instead of reading the entire jury charge to the jury and that appellant received ineffective assistance of counsel. Given that appellant has not shown that he was egregiously harmed by the trial court's failure to read the jury charge or harmed by his counsel's performance, we affirm.

### Background

Officer Grossbard was patrolling for suspicious activity in a high crime area in Houston, Texas, where he saw appellant walking in the street. Appellant walked up to the outside of a gate in front of an apartment complex, and another man walked up to the inside of the gate. They looked around and "did some type of hand-to-hand exchange" through the bars of the fence. Seeing this exchange, Grossbard suspected a narcotics transaction, so he approached appellant and asked for identification. Appellant squeezed through a gap in the gate and ran into the complex.

Grossbard lost sight of appellant but found a cellphone where appellant had been. The phone had images of appellant on it.

Grossbard radioed undercover officers with a description of appellant. After the officers arrived on the scene, they watched the apartment complex and saw appellant approximately 15 minutes later. An officer commanded him: "Houston Police, Stop!" But appellant ran. The officer pulled out his weapon and ordered appellant to turn around. Appellant then complied. After appellant was taken into custody, Grossbard asked appellant if the phone was his. He admitted that he had dropped the phone. Grossbard found $1,500 in cash on appellant.

The jury found appellant guilty of evading arrest, with a prior evading arrest conviction.[1] During the punishment phase of trial, the State presented evidence that appellant previously had been convicted for a number of misdemeanor and felony offenses. After finding two enhancement paragraphs true, the jury sentenced appellant to five years, six months of incarceration.[2]

### Discussion

Appellant contends that the trial court erred in paraphrasing the jury charge to the jury and that appellant received ineffective assistance of counsel. We first address appellant's third and fourth issues complaining of jury charge error because they dispense with one of appellant's ineffective assistance claims. We then review appellant's ineffective assistance claims, raised in his first two issues, in two catego-

---

1. Evading arrest is elevated from a misdemeanor to a state jail felony when the actor has previously been convicted for evading arrest. *See* Tex. Penal Code § 38.04(b)(1)(A).

2. Under Texas Penal Code section 12.425(a), a state jail felony is enhanced to a third degree felony upon a finding that the defendant previously has been convicted of two state jail felonies.

ries: those raised in appellant's motion for new trial and those raised for the first time on appeal. We do this because different standards of review apply for each category.

### I. No Egregious Harm in Paraphrasing Jury Charge

Appellant contends in his third and fourth issues that the trial court erred in paraphrasing portions of the jury charge instead of reading the entire charge to the jury. The parties agree that the trial court violated the requirements of the statutory scheme in failing to read the entire charge to the jury. Appellant also acknowledges that his counsel did not object to this. We conclude that the trial court erred in failing to read the entire charge to the jury, but appellant was required and failed to establish that he was egregiously harmed by such error.

■ The trial court is required to deliver to the jury "a written charge distinctly setting forth the law applicable to the case" and "[b]efore said charge is read to the jury," the trial court must give the parties an opportunity to present any objections to the charge. Tex. Code Crim. Proc. art. 36.14. After objections are made by the parties, "the judge shall read his charge to the jury as finally written." *Id.* art. 36.16. When the trial court fails to comply with this requirement, "the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial." *Id.* art. 36.19. Absent a trial objection, however, we may not reverse a con-

viction for the trial court's failure to read the charge without a showing of egregious harm.[3] *See Casanova v. State*, 383 S.W.3d 530, 541 n.40 (Tex. Crim. App. 2012).

The trial judge read the first two pages of the charge while the jury apparently read along.[4] Then the trial judge explained to the jury in his own words that appellant was charged with evading arrest as a second offender. Starting on page three of the six-page charge, the trial court paraphrased the charge while presumably the jury looked at it. Appellant complains about three specific areas when the trial court paraphrased the charge, involving the presumption of innocence, appellant's choice not to testify, and the law governing the jury's deliberations:

- The trial judge said, "Because [appellant is] presumed to be not guilty, he has nothing to prove in this case." The charge reads, "The law does not require a defendant to prove his innocence or produce any evidence at all."

- The trial judge said that appellant's failure to testify "is no indication of guilt at his trial."[5] The charge reads that the jury could not "take [appellant's failure to testify] into consideration for any purpose whatsoever as a circumstance against him."

- The trial judge said, "By reaching a verdict, you follow the law contained in the Court's charge today." The charge reads, "[T]he law you shall receive in these written instructions, and you must be governed thereby."

We first discuss appellant's argument that the trial court's paraphrasing amount-

---

**3.** We discuss the standards for egregious harm below.

**4.** The trial judge repeatedly referred to the page number and paragraph in the charge to which he was referring. We infer that the

jurors either had copies of the charge or were reading along on a screen.

**5.** The trial court elaborated further on this issue, which we discuss in more detail below.

ed to a constitutionally deficient instruction on reasonable doubt. Next, we discuss whether appellant established he was egregiously harmed by the trial court's failure to read the entire charge.

## A. Reasonable Doubt Instruction Not Constitutionally Deficient

■ According to appellant, the trial court's oral statements regarding reasonable doubt amounted to a constitutionally deficient instruction that requires reversal without a showing of harm. Thus, contends appellant, he does not have to establish harm to attain a reversal of his conviction. Appellant relies on the Supreme Court's decision in *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) for this proposition. The jury instructions in that case, which involved a trial for first-degree murder, included an unconstitutional definition of "reasonable doubt."[6] *Id.* at 276–77, 113 S.Ct. 2078. The Supreme Court held that such an unconstitutional "reasonable doubt" instruction amounted to a "structural defect[ ] in the constitution of the trial mechanism, which def[ied] analysis by 'harmless error' standards." *Id.* at 281, 113 S.Ct. 2078.

Appellant argues that the trial court, in paraphrasing the charge, failed to instruct the jury that appellant did not have to produce any evidence because the burden of proof rests exclusively on the State and failed to instruct the jury that appellant's failure to testify could not be used against him. We disagree.

The trial court thoroughly discussed the State's burden of proof, emphasized that appellant did not have to prove anything, and emphatically highlighted the fact that the jury could not consider appellant's decision not to testify for any reason. The trial court told the jury:

- Th[e] presumption of innocence is enough for a verdict of not guilty unless the State has proven each and every [element] beyond a reasonable doubt. *Because [appellant is] presumed to be not guilty, he has nothing to prove in this case.*

- Now, the State filed the case. *The State and the State alone has to prove this case.* They have to prove, again, each and every element beyond a reasonable doubt. If they failed to do that, you must find [appellant] not guilty. Again, the State's burden of proof [is] beyond a reasonable doubt, not beyond all doubt. . . . If you have reasonable doubt as to [appellant's] guilt or innocence, you find him not guilty.

- Yesterday, during jury selection, I talked about [appellant's] Fifth and Fourteenth Amendment privilege, the right to not testify. Obviously [appellant] chose upon advice of counsel to not testify. I instruct on page three when [you] go back in the back, you don't mention that fact. You don't discuss it. Don't elude [sic] to it. Don't comment upon it. Most importantly, [appellant's] silence is no evidence of guilt in this case. If

---

**6.** The Supreme Court did not include the definition in its opinion but noted that it was "essentially identical" to the one held unconstitutional in *Cage v. Louisiana*, 498 U.S. 39, 40–41, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) (per curiam) ("The charge did at one point instruct that to convict, guilt must be found beyond a reasonable doubt; but it then equated a reasonable doubt with a 'grave uncer-

tainty' and an 'actual substantial doubt,' and stated that what was required was a 'moral certainty' that the defendant was guilty. It is plain to us that the words 'substantial' and 'grave,' as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable-doubt standard."). *Sullivan*, 508 U.S. at 277, 113 S.Ct. 2078.

one of the jurors brings up, well, you know, [appellant] didn't testify. You other folks, stop that person. You don't discuss it. You don't comment upon it. Don't bring it up. It is no indication of guilt at his trial.

(Emphasis added.)

Appellant also complains that the trial court erroneously instructed the jury that as long as it reached a verdict, it would be following the law set out by the court. We agree that the trial court's statement "[b]y reaching a verdict, you follow the law contained in the Court's charge today" could be misleading when read out of context.[7] But the trial court began with "[o]n page four, top of the page," indicating that the jury was reading along on that page of the charge, which reads: "You are the exclusive judges of the facts proved, of the credibility of the witnesses and the weight to be given their testimony, but the law you shall receive in these written instructions, and you must be governed thereby." When read in context, it is clear the jurors were instructed that they were the exclusive factfinders and were to be governed by the law set forth in the charge.[8]

The jury did not receive a constitutionally deficient reasonable doubt instruction. Accordingly, we conclude that appellant

was required to show that he was egregiously harmed by the trial court's failure to read the entire charge to the jury. *See Casanova*, 383 S.W.3d at 541 n.40.

## B. No Showing of Egregious Harm

To establish egregious harm, appellant must show that he has suffered actual, rather than merely theoretical, harm. *Ngo v. State*, 175 S.W.3d 738, 750 (Tex. Crim. App. 2005). Errors that result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, or vitally affect a defensive theory.[9] *Id.* In examining the record for egregious harm, we consider (1) the entire jury charge, (2) the state of the evidence, including the contested issues and the weight of the probative evidence, (3) the final arguments of the parties, and (4) any other relevant information revealed by the record of the trial as a whole.[10] *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008).

Appellant argues that he suffered egregious harm from the trial court's (1) paraphrasing the charge regarding the State's burden of proof in a way that materially altered from the written charge, (2) certifying the charge in the record as the final

---

7. Presumably, the trial court intended to say, "you [must] follow the law in the Court's charge . . . . " The trial court said:

 On page four, top of the page, very important, we call you the exclusive judges of the facts proved and the credibility of witnesses. In plain [E]nglish, you decide who you believe and what you believe. By reaching a verdict, you follow the law contained in the Court's charge today.

8. As discussed in further detail below, we do not agree that the trial court's statements supplanted the jury charge. Appellant has not disputed that the written charge included proper instructions on reasonable doubt or that the trial court instructed the jury to read the charge.

9. We apply the egregious harm standard for jury instruction error because the Court of Criminal Appeals has noted that this standard applies to a trial court's failure to read the charge to the jury. *Casanova*, 383 S.W.3d at 541 n.40 (citing Tex. Code Crim. Proc. art. 36.19 and *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984)).

10. Appellant also complains generally that the trial court "paraphrased two-thirds of the jury charge." We agree that this was error, but appellant is also required to demonstrate how such error egregiously harmed him.

charge read to the jury, and (3) not allowing trial counsel or appellant a reasonable opportunity to review and object to purported changes made to the charge by paraphrasing it.

As to his first argument, appellant contends that the trial court "orally modified the charge" by omitting the sentence "[t]he law does not require a defendant to prove his innocence or produce any evidence at all" and that that the jury was required to follow the trial court's oral admonitions and not the written charge. In support of this argument, appellant cites a case that deals with a material variance between a trial court's oral pronouncement of a defendant's sentence and the sentence in the written judgment. *Taylor v. State*, 131 S.W.3d 497, 500 (Tex. Crim. App. 2004) ("When there is a conflict between the oral pronouncement of sentence and the sentence in the written judgment, the oral pronouncement controls.").[11]

As detailed above, we do not agree that the trial court's statements materially varied from the written charge, but even if they had, appellant has cited no authority to support his theory that when a trial court paraphrases the jury charge, the trial court's oral statements control over the written charge. In fact, the Court of Criminal Appeals has held that when a trial court failed to read its charge to the jury but "instructed the jury to read the charge aloud in the jury room," the court had "no occasion to conclude … that the jury did not receive proper instructions with re-

spect to the law applicable to the [defendant's] case." *Casanova*, 383 S.W.3d at 543–44.

In the present case, the trial court instructed the jurors to "take the charge back with [them]. Look it over, read it, mark on it, pass it around. Then start the discussions." The facts of this case are more akin to *Casanova* than *Taylor*. In keeping with the *Casanova* decision, we cannot conclude on this record that the jury did not receive proper instructions with respect to the applicable law in this case. *See id.*

■ As to his second and third arguments, appellant contends that the trial court erred in "certifying the charge in the court's record as the court's final charge read to the jury"[12] and failing "to give the defense … an opportunity to review … any modifications to the charge." Appellant has not demonstrated by authority or analysis how these purported errors affected the very basis of the case, deprived him of a valuable right, or vitally affected a defensive theory. *See Ngo*, 175 S.W.3d at 750. Moreover, appellant has not demonstrated how the trial court failed to give the defense a chance to review its paraphrasing the charge. Trial counsel could have objected and asked the trial court to read the entire charge but did not do so. Indeed, several of the trial court's comments reiterated appellant's constitutional rights and the requirement that the State was re-

---

11. Appellant also cites a Court of Criminal Appeals case from 1907 to support his argument that giving a copy of the written charge to the jurors to read themselves does not cure the trial court's error in failing to read a charge to the jury. *See Harrison v. State*, 105 S.W. 804, 804 (Tex. Crim. App. 1907). The Court of Criminal Appeals more recently has held that a trial court's failure to read the charge does not result in reversible error when the trial court instructed the jury to

read the charge aloud in the jury room and no evidence indicated that the jury did not receive proper instructions. *Casanova*, 383 S.W.3d at 543–44.

12. *See* Tex. Code Crim. Proc. art. 36.17 ("The general charge given by the court and all special charges given or refused shall be certified by the judge and filed among the papers in the cause.").

quired to prove all elements beyond a reasonable doubt: trial counsel reasonably could have concluded that it was in appellant's best interest not to object.[13]

Appellant has not established that he was egregiously harmed by the trial court's failure to read the entire charge to the jury. We thus overrule appellant's third and fourth issues and turn to appellant's ineffective assistance claims.

## II. Ineffective Assistance Not Established

Appellant complains in his first two issues that he received ineffective assistance of counsel in numerous instances. We categorize each ineffectiveness claim by whether it was raised below in appellant's motion for new trial or for the first time on appeal, because different standards of review apply to each category. As to each of his ineffective assistance complaints, appellant either did not demonstrate that his trial counsel's representation fell below an objective standard of reasonableness or that appellant was prejudiced by such representation.

To prevail on an ineffective-assistance claim, a defendant must prove that counsel's representation fell below an objective standard of reasonableness and there is a reasonable probability that, but for counsel's deficiency, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We indulge a strong presumption that counsel's conduct fell within the wide range of reasonable assistance. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). To defeat this presumption, "[a]ny allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

### A. Claims Raised in Motion for New Trial

■ When a defendant asserts ineffective assistance in a motion for new trial, we review the trial court's denial of the motion for abuse of discretion. *Parker v. State*, 462 S.W.3d 559, 562 (Tex. App.– Houston [14th Dist.] 2015, no pet.). We view the evidence in the light most favorable to the ruling and reverse only if no reasonable view of the record could support the ruling. *Id.* We review de novo the trial court's decision on the prejudice prong while giving deference to the trial court's implied resolution of the underlying factual determinations supporting denial of the motion even when based solely on affidavits. *See Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012); *Parker*, 462 S.W.3d at 562.

We first discuss appellant's ineffectiveness complaints raised in the motion for new trial regarding his counsel's representation during the guilt-innocence phase of trial. Next, we discuss appellant's complaints about the punishment phase.

---

**13.** The jury sent out the following question during deliberations: "The jury would like to know if the fact that the officer reasonably has suspicion to approach the defendant [was] a fact in [the] case." Appellant contends that this question demonstrates the jury was confused about the burden of proof and presumption of innocence in this case. But the question does not relate to the State's burden of proof or the presumption of innocence.

Additionally, whether an officer has reasonable suspicion to detain someone is not a question for the jury when there is no dispute concerning the existence of the underlying historical facts from which the reasonable suspicion determination is made. *Robinson v. State*, 377 S.W.3d 712, 719 & n.22 (Tex. Crim. App. 2012). Below, we conclude that no evidence raised a fact question regarding reasonable suspicion. *See infra* at II.A.1.a.ii.

## 1. Guilt–Innocent Phase Complaints

Appellant argued below and argues on appeal that he received ineffective assistance of counsel during the guilt-innocence phase of trial because his attorney failed to do the following:

- object to the legality of appellant's detention;
- seek a jury instruction to determine whether officers had reasonable suspicion to stop and detain appellant;
- move to suppress appellant's identification and the result of officers' search of appellant and his cellphone;
- conduct an independent investigation of the facts or seek funds to hire an investigator; and
- file a motion to quash the indictment.

We discuss each of these issues in turn.

### a. Claims Related to Legality of Appellant's Detention

Appellant argues that his trial counsel should have opposed the legality of his detention by filing a motion to suppress evidence regarding his detention (or otherwise objecting) or requesting a jury instruction for the jury to determine whether officers had reasonable suspicion to stop and detain appellant. We conclude any such efforts by trial counsel would not have been successful.

### i. Failure to File Motion to Suppress or Object to Evidence of Appellant's Detention

■ To establish that his trial counsel was ineffective for failing to file a motion to suppress, appellant was required to prove that his motion would have been meritorious. *See Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998). Similarly, to establish that his attorney's failure to object to evidence was deficient performance, appellant was required to prove that the trial judge would have committed error in overruling the objection. *See Ex parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004). Accordingly, appellant was required to show that efforts to exclude evidence regarding his detention would have been successful.

An officer may conduct a brief investigative detention when he has a reasonable suspicion to believe that an individual is involved in criminal activity. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002) (citing *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). The reasonableness of a temporary detention must be examined in terms of the totality of the circumstances and will be justified when the detaining officer has specific articulable facts, which, taken together with rational inferences from those facts, lead him to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity. *Id.*

■ Here, the totality of circumstances demonstrates that officers had reasonable suspicion to stop and detain appellant. Officer Grossbard testified that he observed appellant engage in suspicious behavior and a "hand-to-hand transaction" through a fence. He testified that this behavior was consistent with a drug deal, so he approached appellant and asked for identification. Appellant escaped through a gap in the fence and ran. When officers later commanded appellant to stop, he again ran.

Grossbard was able to point to specific articulable facts that led him to conclude appellant was engaged in criminal activity. Appellant did not offer any evidence at trial to refute this testimony, and trial counsel testified at the hearing on the motion for new trial that he did not believe the trial court would exclude the evidence in this case.

Considering the totality of the circumstances, we conclude Grossbard had reasonable suspicion to detain appellant. *See id.* at 769 (holding officer had reasonable suspicion to detain defendant when officer arrived on scene after shots had been fired and observed defendant walking in a residential, low-traffic area at 2:30 a.m., and defendant appeared nervous and was walking briskly away from where shots were fired while constantly looking back in officer's direction); *see also Lamb v. State*, No. 14-01-01034-CR, 2003 WL 21782346, at *4 (Tex. App.–Houston [14th Dist.] July 31, 2003, pet. ref'd) (mem. op., not designated for publication) (concluding officer had reasonable suspicion to detain defendant when he was "observed in an area known for criminal activity, engaged in an apparent hand-to-hand narcotics transaction," and began walking briskly away when approached by officers, "ignoring their requests to stop"). Accordingly, appellant has not established that a motion to suppress filed under these circumstances would have been meritorious or an objection would have been granted.

### ii. Failure to Request Jury Instruction

When the evidence raises an issue regarding whether evidence was illegally obtained by an officer, the trial court must instruct the jury "that if [the jury] believes, or has a reasonable doubt, that the evidence was obtained [illegally], ... the jury shall disregard any such evidence so obtained." Tex. Code Crim. Proc. art. 38.23(a). Accordingly, a trial court is required to submit such an instruction under article 38.23 only if there is a factual dispute as to how the evidence was obtained.

*Thomas v. State*, 723 S.W.2d 696, 707 (Tex. Crim. App. 1986).

Before a trial court must submit an article 38.23 instruction, among other things, the evidence heard by the jury must raise an issue of fact regarding whether evidence was illegally obtained. *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007). To raise a disputed fact warranting an article 38.23 instruction, there must be some affirmative evidence that contravenes the existence of that fact. *Id.* at 513.

We have already analyzed the evidence demonstrating that Grossbard had reasonable suspicion to detain appellant. Appellant points to no evidence that contravenes this evidence, and the record demonstrates none.[14] Therefore, no evidence raises a contested fact issue regarding whether appellant was illegally detained. *See id.* at 514–16. Appellant has not shown that there was a disputed fact issue that would have entitled him to an article 38.23 instruction.

### b. Claims Related to Appellant's Identification

We next review appellant's complaint that trial counsel did not move to suppress or request a jury instruction regarding appellant's identification at trial. Appellant raises two ineffective assistance claims relating to his identification: (1) that there was a factual dispute regarding the color of a hoodie, which could reflect that he had been mistaken for another suspect wearing a hoodie; and (2) that testimony regarding photos found on his cellphone and used to identify him should have been suppressed. Appellant contends that trial counsel

14. Appellant argues that there is a fact question regarding where Grossbard was when he first saw appellant but does not explain how such a fact question would contravene the evidence that officers had reasonable suspicion to detain appellant. Grossbard testified unequivocally that he observed a hand-to-hand exchange between appellant and another suspect that appeared to be a drug transaction. That testimony was not contradicted.

should have filed a motion to suppress his identification based on the hoodie mix-up and the warrantless search of his cellphone and should have objected to testimony regarding the cellphone. He also takes issue with his trial counsel's failure to request an article 38.23 instruction based on purportedly conflicting testimony about the hoodie.

Appellant contends that there was a factual dispute as to his identification because Grossbard testified appellant was wearing a black or blue hoodie and Officer Culver, who apprehended appellant, testified the hoodie's color was gray. According to appellant, his trial counsel should have moved to suppress the officers' identification of him or requested an article 38.23 instruction based on conflicting evidence regarding the color of the hoodie.

■■■ According to Officer Culver, when he saw the suspect, he had turned his hoodie inside out, and Culver "couldn't tell what the color was on the outside." Culver could see only the gray inside of the hoodie. He said that oftentimes people engaged in criminal activity wear items of clothing that are a different color inside and turn them wrong-side out to evade being identified as the person who was involved in a

crime. Culver's testimony was not inconsistent with Grossbard's. Thus, appellant has not established that a motion to suppress his identification based on purportedly conflicting evidence regarding the suspect's hoodie would have been meritorious or that there was a disputed fact issue regarding appellant's identification that would have entitled him to an article 38.23 instruction.

■■■ As to the cellphone issue, appellant posits that trial counsel was ineffective for failing to object to officer testimony regarding photos found on the phone and failing to move to suppress the warrantless search of the phone. The only evidence admitted at trial regarding the phone was Grossbard's testimony that the phone had photos of appellant on it.[15] Grossbard also testified that appellant admitted the phone was his and that he dropped it. Presuming that Grossbard's testimony was inadmissible, appellant has not demonstrated how his counsel's failure to object to this evidence or move to suppress it resulted in prejudice.[16]

Officers relied on several other factors to identify appellant, such as Grossbard's eyewitness identification and appellant's attire, tattoos on his head and neck, and

**15.** These photos were not offered or admitted at trial.

**16.** We note that a party lacks standing to object to the reasonableness of a search of abandoned property. *McDuff v. State*, 939 S.W.2d 607, 616 (Tex. Crim. App. 1997); *see also State v. Granville*, 423 S.W.3d 399, 409 (Tex. Crim. App. 2014) ("Although a person may have a reasonable and legitimate expectation of privacy in the contents of his cell phone, he may lose that expectation ... if he abandons his cell phone."). Abandonment of property occurs when a defendant intends to abandon the property and his decision to abandon it is not due to law enforcement misconduct. *McDuff*, 939 S.W.2d at 616. "When police take possession of property abandoned independent of police miscon-

duct[,] there is no seizure under the Fourth Amendment." *Id.* Abandonment is primarily a question of intent that can be inferred from the words and actions of the party and other circumstances surrounding the alleged abandonment. *Id.* The dispositive issue is whether the accused voluntarily discarded, left behind, or otherwise relinquished his interest in property so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search. *Id.* We need not decide whether appellant intentionally abandoned his cellphone under these circumstances because he has not shown how he was prejudiced by his counsel's failure to object to or move to suppress Grossbard's testimony.

beard. Given the officers' identification of appellant based on these distinctive features, appellant did not establish a reasonable probability that but for his counsel's failure to object to or move to suppress Grossbard's testimony regarding the photos on appellant's cellphone, the result of the proceeding would have been different.

### c. Failure to Investigate Facts of Offense

■■ Appellant's trial counsel failed to visit the scene of the offense, conduct independent interviews of the State's witnesses, "attempt to locate any additional witnesses," obtain the officers' disciplinary histories, or consult an expert to examine the fingerprints on prior judgments or jail cards for appellant's prior convictions to determine whether these fingerprints were of sufficient quality to support the jury's enhancement findings.[17] Because Appellant merely speculates as to what evidence trial counsel might have discovered if he had conducted an independent investigation, we conclude appellant has not shown that but for his counsel's failure to investigate, the result of the proceeding would have been different.

At the hearing on the motion for new trial, trial counsel conceded that he did not investigate. He explained that he (1) considered going to the scene but "couldn't imagine where [he] could find anything that would be helpful to [appellant]," (2) would have gone if he thought it would be helpful, (3) did not interview officers because they generally are not willing to speak to defense attorneys, and (4) felt that the offense report was "pretty definitive of what happened." Appellant did not provide any evidence regarding what an investigation of the facts by his trial counsel would have revealed.

■■■ Without a showing of what an investigation would have revealed that reasonably could have changed the result of the case, a claim fails for ineffective assistance based on trial counsel's general failure to investigate the facts of the case. *Stokes v. State*, 298 S.W.3d 428, 432 (Tex. App.–Houston [14th Dist.] 2009, pet. ref'd). Likewise, a claim for ineffective assistance based on trial counsel's failure to interview a witness cannot succeed without a showing of what the interview would have revealed that reasonably could have changed the result of the case. *Id.*

■■ Appellant did not present any evidence regarding what visiting the scene of the offense, conducting independent interviews of the State's witnesses, locating other witnesses, obtaining officers' disciplinary histories, or consulting a fingerprint expert would have revealed. Accordingly, appellant has not established that but for his counsel's failure to investigate the facts of the offense, the outcome of his trial would have been different. *See Cooks v. State*, 240 S.W.3d 906, 912 (Tex. Crim. App. 2007) (holding "conclusory allegation" that trial counsel failed to conduct an investigation did not demonstrate prejudice because no showing was made regarding what evidence a proper investigation would have revealed that "reasonably could have changed the result"); *Stokes*, 298 S.W.3d at 432 (holding that defendant's motion for new trial and declaration did not "provide the names of the witnesses that his trial

---

**17.** Appellant contends that at least one of the fingerprints, on State's Exhibit 7, was of "poor quality" and asserts "it's entirely possible" that an independent examiner "would have found the prints to be of insufficient quality for comparison." Appellant complains that trial counsel only objected to Exhibit 7's relevance, but, as discussed below, does not present evidence of what a fingerprint expert would have concluded about the quality of the fingerprint.

counsel failed to interview [or] state what the investigation or interviews would have revealed that reasonably could have changed the result of this case" and thus defendant "did not provide the trial court with sufficient facts from which the court reasonably could conclude that, but for counsel's alleged failures, a reasonable likelihood exists that the outcome of his trial would have been different").

### d. Failure to Move to Quash Indictment

■■■ Appellant asserts that his trial counsel should have made a formal written or oral motion to quash the indictment or to seek time "to produce rebuttal case law" objecting to the State's removal of language from the indictment. The language related to the date and cause number of one of appellant's prior evading arrest convictions, which elevated the charge from a misdemeanor to a state-jail felony. *See* Tex. Penal Code § 38.04(b)(1)(A) (elevating evading arrest from a misdemeanor to a state jail felony when the actor has previously been convicted for evading arrest). Appellant has not established that a motion to quash the indictment would have been meritorious.

The original indictment filed by the State alleged, in pertinent part, that appellant previously had been convicted of evading arrest on March 29, 2006 and listed the cause number and court in which appellant had been convicted. The State made an oral motion to strike out the particularities of the March 29 conviction before trial commenced. Trial counsel argued that the

State was required to prove the particularities of the prior offense, but the trial court overruled the objection. The trial court granted the State's motion and said the indictment would read: "Before this case, [appellant] was finally convicted of the offense of evading arrest."

Appellant cites no authority to support his argument that the State was required to include the date and cause number of his prior conviction in the indictment. In fact, the Court of Criminal Appeals has held that the date of the defendant's prior conviction for evading arrest is not an element of the crime that the State has to prove: the State is required to prove only that a defendant was previously convicted for evading arrest to elevate evading arrest from a misdemeanor to a state-jail felony.[18] *Ex parte Carner*, 364 S.W.3d 896, 899 (Tex. Crim. App. 2012).

Appellant contends, however, that the failure of the State to include the date and cause number of his prior conviction in the indictment deprived him of adequate notice to protect himself from a double jeopardy violation under the Fifth Amendment of the United States Constitution and "Article I, Section 14" because, according to appellant, the same prior conviction was used both to increase the severity of the offense and to enhance appellant's punishment.[19] According to appellant, "The State abandoned this language specifying the jurisdictional evading by cause number, because [it] knew that [it was] double counting the punishment and the jurisdictional enhancements."

---

**18.** As discussed below, during the guilt-innocence phase of trial, the State presented evidence of a prior evading arrest conviction from January 2002 to establish that appellant was previously convicted for evading arrest. To the extent that appellant is arguing that the State was required to prove up the March 2006 conviction because that conviction was referenced in the original indictment, we have found no case law to support such an assertion.

**19.** We presume that appellant's reference to "Article I, Section 14" is to the double jeopardy clause in the Texas Constitution. *See* Tex. Const. art. I, § 14.

Appellant has not cited any authority in support of his double jeopardy argument, and our review of the record reveals no indication that the State was "double counting" appellant's evading arrest conviction both to increase the severity of the offense and to enhance his punishment. The State presented evidence during the guilt-innocence phase of trial that appellant was convicted for evading arrest in September 2002. During the punishment phase, the State presented evidence that appellant had eleven other previous misdemeanor and felony convictions, not including the September 2002 evading arrest conviction.

Because appellant has not shown that a motion to quash would have been meritorious, he has not established that but for his counsel's failure to move to quash or otherwise object to the indictment, the outcome of his trial would have been different. *See Douglas v. State*, 739 S.W.2d 660, 662 (Tex. App.–Houston [1st Dist.] 1987, pet. ref'd) ("Because appellant's [motion to quash and other] pre-trial motions would not have been meritorious even if presented differently by trial counsel, appellant cannot show that the outcome of the proceeding would have been any different.").

### 2. Punishment Phase Complaints

We now turn to appellant's ineffectiveness claims raised below relating to the punishment phase of trial. All of appellant's claims relate to trial counsel's failure to investigate and present mitigating evidence. Appellant complains that his trial counsel failed to (1) visit him in jail;[20] (2) obtain a list of potential mitigating witnesses; (3) interview his family members; (4) obtain his school, juvenile, or hospital records; (5) request funds for an investigator; (6) file a motion to have appellant examined by a psychologist; (7) obtain State files for appellant's prior convictions or attempt to interview witnesses in those cases; and (8) have a theme for the punishment phase of trial.

■■■ Appellant presented mitigating evidence in support of his motion for new trial that was related only to appellant's health, drug abuse history, mental health, and history of special education.[21] Despite trial counsel's lack of efforts, we will not speculate as to what mitigating evidence may have been available for presentation when the record is silent as to such evidence. *See, e.g., Swanner v. State*, 499 S.W.3d 916, 921 (Tex. App.–Houston [14th Dist.] 2016, no pet.). Accordingly, we limit our analysis only to the mitigating evidence presented.

■■■ Trial counsel is neither required "to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the

---

**20.** Trial counsel visited appellant in the holdover cell in the courthouse several times, but they had to visit through a glass wall, and it was not private.

**21.** Appellant submitted his own affidavit in support of the motion attesting to these issues and presented expert testimony from a psychologist regarding appellant's mental health. Although appellate counsel subpoenaed appellant's family members to attend the motion for new trial hearing, they did not attend or submit affidavits, and thus, the record does not reflect that they would have testified on

appellant's behalf or what they would have said. *Cf. Milburn v. State*, 15 S.W.3d 267, 269 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd) ("At the hearing on the motion for new trial, the parties stipulated to the testimony of twenty of appellant's relatives and friends … that each witness would have testified they had known appellant for a long period of time, they were never contacted to testify by any member of appellant's defense team, they would have testified had they been requested to, and they would have asked the jury to consider the minimum punishment.").

defendant at sentencing" nor "to present mitigating evidence at sentencing in every case." *Wiggins v. Smith*, 539 U.S. 510, 533, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). However, a decision not to investigate and pursue a line of mitigating evidence "must be directly assessed for reasonableness in all circumstances." *Id.* (quoting *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052). Trial counsel can only make a reasonable decision to forego presentation of mitigating evidence after evaluating available testimony and determining that it would not be helpful. *Humphrey v. State*, 501 S.W.3d 656, 663 (Tex. App.–Houston [14th Dist.] 2016, pet. ref'd); *Milburn v. State*, 15 S.W.3d 267, 270 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd).

Appellant's trial counsel admitted that he did not investigate appellant's mental health or any other potential mitigating factors. He asserted that appellant was uncooperative and would not provide any information regarding mitigating circumstances because appellant was convinced that the trial court would dismiss the indictment.

■ At the hearing on the motion for new trial, a clinical psychologist testified about a variety of mental health issues suffered by appellant, including depression, experiencing delusions, attention deficit hyperactivity disorder, and drug use. He also testified that appellant had a difficult upbringing and, at a young age, lost the only father figure he knew. He recommended treatment for depression but admitted that appellant was reluctant to receive treatment and that one of appellant's disorders "is characterized by disregard for the wellbeing of others" that can lead to "violent tendencies." Appellant attested that he was in special education "or resource centered classes in middle school and high school," suffers from seizures, has a drug abuse problem, and hears "voices in [his] head telling [him] to do things."

■ Despite trial counsel's apparent failures to investigate and present mitigating evidence, appellant did not establish how he was prejudiced by such failures. To evaluate prejudice in the context of a failure to investigate or present mitigating evidence, we " 'reweigh the evidence in aggravation against the totality of available mitigating evidence.' " *Washington v. State*, 417 S.W.3d 713, 728 (Tex. App.–Houston [14th Dist.] 2013, pet ref'd) (quoting *Wiggins*, 539 U.S. at 534, 123 S.Ct. 2527). We compare the evidence presented by the State with the evidence the trier of fact did not hear due to counsel's failure to investigate. *Id.* at 725.

Taking into consideration the psychologist's testimony from the hearing—including his concessions that appellant is reluctant to receive treatment and displays antisocial characteristics—and appellant's affidavit regarding his physical and mental health, past drug abuse, and history of special education, we cannot say that a reasonable jury would have given appellant a lesser sentence had it been presented with this evidence. Appellant received a middle-of-the-range sentence of five years, six months, when the range of punishment was from two to ten years. Appellant has a long list of prior convictions—eleven in all, including two prior evading arrest convictions—that the jury was allowed to consider. *See Humphrey*, 501 S.W.3d at 664 ("We conclude that trial counsel's decision not to order the jail mental health reports and counsel's decision not to present any mitigation witnesses at punishment did not fall below an objectively reasonable standard."); *see also Collins v. State*, No. 14-15-00330-CR, 2016 WL 6603713, at *6 (Tex. App.–Houston [14th Dist.] Nov. 8, 2016, pet. filed) (mem. op., not designated for publication)

(holding that evidence regarding defendant's mental health disorder would not mitigate sentence without evidence establishing a connection between the disorder and the offense).

■ For the foregoing reasons, we conclude that the trial court did not abuse its discretion in denying appellant's motion for new trial. Having so concluded, we turn to appellant's ineffectiveness claims raised for the first time on appeal.

### B. Ineffective Assistance Claims Raised for the First Time on Appeal

■ In the majority of cases, the appellant is unable to meet the first prong of the *Strickland* test—that trial counsel's representation fell below an objection standard of reasonableness—because the record on direct appeal is undeveloped. *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007). When the record is silent as to trial counsel's strategy, we will not conclude that appellant received ineffective assistance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). A sound trial strategy may be imperfectly executed, but the right to effective assistance of counsel does not entitle a defendant to errorless or perfect representation. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006).

■ It is not sufficient for the appellant to show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence. *Mata*, 226 S.W.3d at 430. Rather, to establish that the attorney's acts or omissions were outside the range of professionally competent assistance, appellant "must show that counsel's errors were so serious that he was not functioning as counsel."

*Patrick v. State*, 906 S.W.2d 481, 495 (Tex. Crim. App. 1995). We may not assume a lack of sound trial strategy on the part of trial counsel merely because we are unable to discern any particular strategic or tactical purpose in counsel's trial presentation. *See Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002) ("A vague, inarticulate sense that counsel could have provided a better defense is not a legal basis for finding counsel constitutionally incompetent. ... [A] defendant must prove, by a preponderance of the evidence, that there is, in fact, no plausible professional reason for a specific act or omission.").

Appellant argues for the first time on appeal that he received ineffective assistance of counsel because his trial counsel:

- failed to object to the trial court's orally paraphrasing the charge to the jury;
- failed to object or request limiting instructions as to extraneous bad acts;
- failed to object to improper argument from the State;
- alluded to extraneous offenses during closing argument; and
- failed to object to the court's not recording its response to a jury question during deliberations.

We address each of his complaints in turn.

### 1. Failure to Object to Trial Court's Paraphrasing the Charge

■ As discussed above, trial counsel did not object when the trial court orally paraphrased the charge to the jury, but many of the trial court's comments reiterated appellant's constitutional rights and highlighted the requirement that the State must prove its case beyond a reasonable

doubt. We will not speculate as to why trial counsel did not object to the trial court's failure to read the entire charge. *See Longoria v. State*, 148 S.W.3d 657, 659 (Tex. App.–Houston [14th Dist.] 2004, pet. ref'd) ("Evaluating the attorney's choices made during trial would require us to second-guess his strategy through hindsight, an exercise which cannot support a finding of ineffective assistance.").

### 2. Failure to Object to Extraneous Offense Evidence or Request Limiting Instruction

 Trial counsel did not object to or request a limiting instruction as to evidence regarding the $1,500 in cash found on appellant when he was arrested. Appellant contends that this was inadmissible extraneous offense evidence and his counsel should have objected and requested an instruction that the jurors were to consider such testimony only "if they believed beyond a reasonable doubt that the cash was the proceeds of the sale of illegal narcotics."

Evidence of extraneous offenses is not admissible at the guilt phase of a trial to prove that a defendant committed the charged offense in conformity with a bad character. Tex. R. Evid. 404(b); *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). However, extraneous offense evidence may be admissible when it has relevance apart from character conformity. *Devoe*, 354 S.W.3d at 469. For example, it may be admissible to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.* Evidence of another crime, wrong, or act also may be admissible as same-transaction contextual evidence when several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony of any one of them cannot be given without showing the others. *Id.*

 The jury is entitled to know all relevant surrounding facts and circumstances of the charged offense. *Id.* But same transaction contextual evidence is admissible only when the offense would make little or no sense without also bringing in that evidence, and it is admissible only to the extent that it is necessary to the jury's understanding of the offense. *Id.*

 Once an extraneous act has been ruled admissible, the jurors must be instructed about the limits on their use of that extraneous act if the defendant so requests. *Ex parte Varelas*, 45 S.W.3d 627, 631 (Tex. Crim. App. 2001). Specifically, jurors should be instructed that they are not to consider extraneous act evidence unless they believe beyond a reasonable doubt that the defendant committed that act. *Id.*

 The failure of trial counsel to request a limiting instruction is not, by itself, ineffective assistance. *Agbogwe v. State*, 414 S.W.3d 820, 837 (Tex. App.–Houston [1st Dist.] 2013, no pet.). Although hindsight speculation may suggest a limiting instruction of some nature should have been given, a reasonable explanation for counsel's actions can be that, as a trial tactic, requesting a limiting instruction may have highlighted the issue. *See id.*

In the present case, Officer Culver testified without objection that he found the cash on appellant when he was arrested. This testimony was not otherwise highlighted until closing argument during the punishment phase of trial when the prosecutor stated, "We've got drug offenses . . . and . . . we know he had over $1500 in his

pocket."[22]

Although the record is silent on trial counsel's reasons for not objecting to and requesting a limiting instruction as to Culver's testimony, a reasonable presumption would be that trial counsel decided that objecting and seeking a limiting instruction would only highlight the testimony. Of particular note, trial counsel did not have the advantage of hindsight to envisage that the prosecutor would draw a connection in closing argument between the cash and drug offenses.

On this record, we cannot conclude that trial counsel's failure to object and request a limiting instruction concerning this evidence fell below an objective standard of reasonableness. *See id.* at 838; *see also Webb v. State*, 995 S.W.2d 295, 301 (Tex. App.–Houston [14th Dist.] 1999, no pet.) ("Although we acknowledge the Court of Criminal Appeals['] holding that the best course of action is to request a contemporaneous limiting instruction, we cannot say based on this record that counsel's failure to do so rendered his representation of appellant unreasonably deficient.") (citing *Garcia v. State*, 887 S.W.2d 862, 881 (Tex. Crim. App. 1994) (holding that trial counsel's failure to request a limiting instruction did not constitute ineffective assistance because counsel did not want to draw more attention to the incriminating evidence)).

### 3. Complaints about Closing Argument

Appellant argues that his trial counsel should have objected to several comments made by the prosecutor during closing argument for the guilt-innocence and punishment phases of trial. He also complains that trial counsel highlighted his criminal

record during closing argument. We address each argument below.

### a. State Attempts to Bolster Officer Credibility

Appellant complains because his trial counsel did not object to comments by the prosecutor made during closing argument in the guilt-innocence phase of trial. These comments, set forth below, related to why the testifying officers decided go into law enforcement:

> Officer Grossbard had also testified about how he grew up in a tough area. He's from New York. He became an officer because he wanted to make a difference. He wants to improve these areas. He doesn't want kids growing up the way he did.

> Officer Culver has got a degree in accounting who could be doing something else and making more money, doing somethings [sic] less dangerous; but he chose to be a police officer after doing a ride along. He became passionate about police. Ultimately, we want to make sure that police are allowed to do their job.

■ These comments about the officers were taken directly from the officers' testimony elicited at trial. As appellant acknowledges, permissible jury argument includes, among other things, summation of the evidence and pleas for law enforcement. *Coble v. State*, 871 S.W.2d 192, 204 (Tex. Crim. App. 1993). However, appellant asserts that the above comments improperly bolstered the officers' credibility.

■ Generally in closing argument the State may not bolster the credibility of its witnesses with unsworn testimony. *Johnson v. State*, 987 S.W.2d 79, 84 (Tex. App.–

---

**22.** Trial counsel objected to this statement as "outside the record." The trial court overruled the objection. We note that the State did not highlight this evidence during the guilt-innocence phase of trial.

Houston [14th Dist.] 1998, pet. ref'd). However, if the State's argument is a reasonable deduction from, or summation of, the evidence, it is permissible jury argument. *See id.*

■ Here, the prosecutor's comments summarized evidence in the record regarding the officers' backgrounds. The prosecutor additionally made a plea for law enforcement in asking the jury "to make sure the police are allowed to do their job." These comments accordingly encompassed permissible areas of jury argument and did not constitute improper bolstering. An attorney's failure to object to proper argument is not ineffective assistance. *See id.* at 84–85; *see also Martinez v. State*, No. 14-08-00345-CR, 2009 WL 3734154, at *8 (Tex. App.–Houston [14th Dist.] Nov. 10, 2009, pet. ref'd) (mem. op., not designated for publication) (holding State's closing argument regarding complainant's lack of criminal history was proper because trial counsel put complainant's criminal history in evidence and argument was a summation of the evidence).

### b. References to Appellant's Criminal History

Appellant also complains that his trial counsel did not object to the prosecutor's reference to appellant's criminal history during closing argument in the punishment phase. He contends that the following comment mischaracterized the number of appellant's prior felonies: "We know that he's been convicted of two state jail felonies. Because of that, he's facing a range of punishment from two to ten. We know that's not all of his criminal history. We know that he's got numerous other felonies."

■ Because he only had one other felony conviction in addition to the state jail felonies, appellant asserts that trial counsel should have objected to the State's comment that appellant had "numerous other felonies." In light of appellant's extensive criminal history, however, we cannot say that the prosecutor's comment referencing "numerous other felonies" swayed the jury.[23]

■ Appellant also complains about trial counsel's reference to his prior convictions. Trial counsel looked at his phone at the beginning of his closing argument and stated:

> I'm not playing with my phone here. I'm accessing Sheriff's records so I can get a clear picture of what my client's record is, and I notice on here that the vast majority of his record are misdemeanors. Now, I don't know what that means to you. Of course a misdemeanor is just jail time; and I guess, well the felonies he's got are because of the enhancements. He's had evading arrest and then got other evading arrest on top of that. That's of course what we have here.

Trial counsel's strategy apparently was to emphasize that appellant's prior convictions were not serious crimes, particularly in light of the State's emphasis in closing on appellant's criminal record. While trial counsel could have been more eloquent, we cannot second guess his trial strategy through hindsight. *See Longoria,* 148 S.W.3d at 659.

Appellant has not established that his counsel fell below an objective standard of reasonableness in failing to object to the State's comments during closing argument or in downplaying appellant's criminal his-

---

**23.** In addition to presenting evidence of three felonies, the State presented evidence of many prior misdemeanors.

**576**

tory as comprising primarily misdemeanors.

### 4. Failure to Object to Trial Court's Response to Jury Question

■ Trial counsel did not object when the trial court failed to respond in writing or to have the court reporter record a response to a note from the jury. The jury asked during deliberations whether "the fact that the officer reasonably has suspicion to approach the defendant is a factor in this case/dilliberation [sic] process. Is the case solely did he run or not?" *See* Tex. Crim. Proc. Code art. 36.27.[24]

Appellant has not shown how his trial counsel's failure to object fell below an objective standard of reasonableness. To support his argument, appellant cites a case in which the record reflected that the trial court responded to a jury's question with an improper comment on the weight of the evidence. *See Williamson v. State*, 771 S.W.2d 601, 609 (Tex. App.–Dallas 1989, pet. ref'd) (holding that trial court commented on the weight of the evidence in affirmatively responding to a jury's note asking if a stolen microwave had been "positively identified as the one taken" and thus defendant was prejudiced by trial counsel's failure to object).

Here, the record is silent as to whether the trial court responded to the jury's question at all and if so, what that response was. We cannot speculate as to whether counsel's failure to object fell below an objective standard of reasonableness or appellant was prejudiced by such a failure.

### 5. Cumulative Effect of Counsel's Errors

■ Finally, appellant asserts that the cumulative effect of trial counsel's allegedly ineffective actions resulted in the denial of appellant's right to counsel. Having concluded that trial counsel did not render ineffective assistance in appellant's complained of actions, we likewise conclude that the cumulative effect of trial counsel's actions does not amount to ineffective assistance. *See Wert v. State*, 383 S.W.3d 747, 756 (Tex. App.–Houston [14th Dist.] 2012, no pet.) (citing *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999) (acknowledging that non-errors may not, in their cumulative effect, amount to error)).

For the foregoing reasons, we conclude that appellant has not established that he received ineffective assistance of counsel. We overrule appellant's first and second issues.

### *Conclusion*

Having concluded that appellant did not establish egregious harm from the trial court's failure to read the entire charge to the jury and did not establish that he received ineffective assistance of counsel, we affirm the judgment of the trial court.

---

24. Under article 36.37, the trial court is required to answer communications from the jury during deliberations in writing and to use "reasonable diligence to secure the presence of the defendant and his counsel, ... submit the question and ... answer to the ... defendant or his counsel or objections and exceptions, in the same manner as any other written instructions are submitted to such counsel, before the court gives such answer to the jury ...." Tex. Crim. Proc. Code art. 36.27.