**Affirmed and Memorandum Opinion filed January 9, 2024.**



**In The**

# Fourteenth Court of Appeals

---

**NO. 14-22-00700-CR**

---

**DARYL GLENN GARDINER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 405th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 21-CR-0253**

---

## MEMORANDUM OPINION

Appellant argues in two issues that he is entitled to a new punishment hearing because his counsel was ineffective for failing to object to the prosecutor's closing statements. For the reasons explained below, we overrule both of appellant's issues and affirm the trial court's judgment.

## BACKGROUND

Appellant was in a polyamorous relationship with his girlfriend and with a man whom we identify as the complainant. All three individuals lived in a house, along with appellant's special needs son, mother, and grandmother.

There was a disturbance one night when the complainant woke up the girlfriend and demanded that they leave. A physical altercation ensued between appellant and the complainant, and it ended with appellant shooting the complainant three times.

Appellant claimed that the shooting was an act of self-defense, but the prosecution argued that the shooting was not justifiable because, among other reasons, the shooting occurred after the two men had already separated. The jury agreed with the prosecution and convicted appellant of murder. But during the punishment phase of trial, the jury found that appellant had acted under the immediate influence of sudden passion, and assessed his punishment at fourteen years' imprisonment.

## INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

Both of appellant's issues on appeal focus on the prosecutor's closing statements during the punishment phase of trial.

In his first issue, appellant contends that the prosecutor improperly stated that appellant had been "cut breaks." That phrase does not actually appear anywhere in the prosecutor's closing statements. However, the prosecutor did remark that appellant had received "breaks" more generally, which the prosecutor described as a type of favorable treatment in past criminal prosecutions. For greater context, we reproduce the following passage:

Now, when we're looking at trying to hold somebody accountable, one of the things we do look at is their history. There is some history in this case that's been introduced to you in punishment.

We've got three exhibits here that are in punishment. The first two punishment exhibits are State's Exhibit 67 and State's Exhibit 68. What you'll see when you look at this is some criminal history from back in 2006.

We have the offense of attempted burglary of a building. That was reduced down from the charge of burglary of a building. And this defendant was allowed to serve time in county jail instead of having to go to prison.

We have these two felony charges that were reduced down to a lower level charge; and he was allowed to serve time in county so he didn't become a convicted felon.

These two charges here represent an opportunity where he could have really turned his life around. He could have done the right thing, not had any future problems.

The way these were set up and him not becoming a convicted felon, this was a break. This was an opportunity.

Then you also have State's Exhibit 69. This is a 2011 case where he was placed on deferred adjudication for a period of four years for the offense of possession of marijuana in a drug-free zone.

You actually heard quite a bit about marijuana in this case, and the defendant played up all the way through guilt-innocence how bad marijuana is and how—the horrible effects it can have on a person.

That's the same thing that in 2011 this defendant was found in possession of, a felony amount in a school zone—or a drug-free zone. I'm sorry.

But even with that, you'll see it's an order of deferred adjudication. So, he was given another break and was not made a convicted felon. He was allowed to be on a deferred adjudication where he won't have that conviction following him and can still turn things around and make something of his life.

You have a pattern of felony conduct every few years leading up to what happened on January 21st of 2021 [the date of the murder]. I'm

not saying that's the whole basis of your verdict, but it is something that has to be taken into consideration.

In his second issue, appellant focuses on a different portion of the prosecutor's closing statement, where the prosecutor made two references to "ripple effects." We reproduce that portion too:

> Ladies and gentlemen, there are no winners here. There is no joy in the task that you're going to be asked to do. Anytime something like this happens, there is a huge ripple effect and there are lots of victims.
>
> Obviously, we have [the complainant] as a victim. When you think about that, [the complainant] was in his early 30s. [The complainant] is not going to be able to grow up and fall in love. He'll never be able to marry, never be able to father or raise children. All of that has come to an end.
>
> He didn't get to be there for [appellant's grandmother] as she finished out her life. He won't be able to be there for his own father as he finishes out his life. [The complainant's] days have ended and they ended prematurely. It was not necessary.
>
> Beyond [the complainant], you have other victims that were in that room that night. [The girlfriend]. I don't know what [the girlfriend] was like before all of this. Y'all didn't know her. None of us knew her.
>
> I think it was pretty clear from her testimony that this impacted her, and this didn't have to. If the defendant hadn't fired his weapon, this would have been one argument that got way out of hand; and they would have moved on with their life.
>
> But there was nothing so traumatic that she couldn't move on, until that gun was fired.
>
> [Appellant's mother] is a victim, too. You've heard about the burden that she's had to take on since this happened, and I certainly respect and applaud her for doing that.
>
> That should have never been necessary. If the defendant hadn't fired his weapon, things would have cooled down; and it would not have been necessary.
>
> She's in an incredibly difficult position; but ultimately, she's in that position because of this defendant's decision.

4

With regard to his children, all of them are in that same situation as [appellant's mother], they have lost their father figure through no fault of their own but through a decision he made that night.

You heard the defendant testify that wherever he's at, whatever he's doing, he's going to do his best and stay in their life and be a positive influence.

Even in prison, I'm sure he's going to do all he can to still be a positive influence in their lives.

That is something that is not afforded to [the complainant], and he'll never be able to do because of the sentence that [the complainant] received for his actions that early morning. They were final and definitive.

[Appellant's grandmother] was a victim. She was extremely close with [the complainant]. She died about 14 months later, and [the complainant] wasn't there to be by her side as she passed.

Mr. Price, who raised the victim, Mr. Price—

| DEFENSE COUNSEL: | Objection. There's no testimony of Mr. Price's relationship with the decedent. |
| THE COURT: | I agree. |
| | You're getting close on time, [prosecutor]. Wrap it up. |

PROSECUTOR:   This offense had a huge ripple effect on a lot of people. That's something you have to take into consideration when assessing punishment.

Defense counsel did not object to the statements concerning "breaks" or to the statements concerning "ripple effects." Appellant now argues that counsel was ineffective by not lodging such objections.

We review claims of ineffectiveness under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under that standard, appellant must prove by a preponderance of the evidence that his counsel's performance was deficient, and that

5

the deficient performance was so prejudicial that it deprived him of a fair trial. *Id.* at 687.

When assessing counsel's performance, our review is highly deferential and begins with the strong presumption that counsel's decisions were reasonably professional and were motivated by sound trial strategy. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). The effect of this presumption is that we cannot ordinarily conclude that counsel's performance was deficient on a silent record. *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Counsel must usually be given an opportunity to explain his actions and omissions before he is condemned by a court for being unprofessional or incompetent. *See Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002).

In this case, appellant did not file a motion for new trial complaining of counsel's performance, nor did counsel otherwise testify or file an affidavit explaining his strategic decisions. When the record is silent, as it is here, we cannot conclude that counsel's performance was deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). This is a difficult standard, and we cannot say that counsel's failure to object rises to that level here because the prosecutor's closing statements were not actually objectionable.

Closing statements are proper if they (1) summarize the evidence, (2) make reasonable deductions from the evidence, (3) respond to arguments of opposing counsel, or (4) plead for law enforcement. *See Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). And here, the prosecutor's closing statements easily fall within the first two categories.

As for the first statement, the prosecutor used the word "break" to argue that appellant had received favorable treatments in the past. For instance, the prosecutor

remarked that appellant had twice been charged with burglary of a building—which is a felony—but in each case, the charge was later reduced to attempted burglary of a building—which is a misdemeanor. *See* Tex. Penal Code § 30.02 (providing that burglary of a building is a state jail felony); Tex. Penal Code § 15.01(d) (providing that an attempt of a state jail felony is a misdemeanor). The prosecutor also remarked that appellant had once been charged with felony possession of a controlled substance, but he was allowed to be released on deferred adjudication. All of the prosecutor's arguments were fully supported by the evidence, and were appropriate uses of the word "break."

As for the second statement, the prosecutor used the phrase "ripple effect" to indicate that many people have been impacted by the murder. That statement was likewise supported by the evidence. The complainant was most directly impacted by the murder, given that his life was immediately brought to an end. But others were indirectly impacted as well. The prosecutor referenced appellant's grandmother, with whom the complainant had a close relationship as her former caregiver. Though the grandmother was not alive at the time of the trial, there was testimony from other witnesses that she had taken the complainant's murder "pretty hard." The prosecutor also referenced the girlfriend, who had testified that she was traumatized by the murder, and that she has "thought about it every night since this happened." Appellant's mother was likewise impacted in that she has become the primary caregiver of appellant's special needs son, which is a responsibility that she has also described as "hard." All of these consequences of the murder could fairly be described as "ripple effects."

Appellant has not cited any authorities in support of his argument that the prosecutor's use of the words "breaks" and "ripple effects" was somehow improper or prejudicial. Because we perceive nothing inappropriate in their usage, we

conclude that any objection to those statements would have been futile. Thus, counsel's performance could not have been deficient by his failure to make any such objection. *See Straight v. State*, 515 S.W.3d 553, 575 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) ("An attorney's failure to object to proper argument is not ineffective assistance.").

Having concluded that appellant has not shown that counsel's performance was deficient, we need not consider whether counsel's failure to object resulted in any prejudice. *See Strickland*, 466 U.S. at 700 ("Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim.").

## CONCLUSION

The trial court's judgment is affirmed.

/s/ Tracy Christopher
Chief Justice

Panel consists of Chief Justice Christopher and Justices Bourliot and Hassan.
Do Not Publish — Tex. R. App. P. 47.2(b).