**Affirmed and Memorandum Opinion filed January 28, 2021.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-18-00931-CR

_____

**ROY BOLINGER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 174th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1337329**

## MEMORANDUM  OPINION

Appellant was convicted of continuous sexual abuse of a child and sentenced to life imprisonment.  Appellant raises three issues on appeal.  In his first issue appellant contends that his counsel rendered ineffective assistance by failing to (1) object to evidence of extraneous offenses used to impeach appellant on cross-examination, (2) file and argue a motion in limine on the extraneous offenses, (3) file a *Theus* motion, and (3) request a limiting instruction.  In his second issue appellant argues that the trial court erred in denying appellant's motion to quash

his indictment based on the denial of appellant's right to a "grand jury indictment" under the Texas Constitution.  In his third issue appellant contends that he was subjected to cruel and unusual punishment when he was forced to listen to improper victim allocation after he had been sentenced.  We affirm.

## I.    BACKGROUND

The State indicted appellant for continuous sexual abuse of a child.  The State alleged that appellant:

> [D]uring a period of time of thirty or more days in duration, commit[ed] at least two acts of sexual abuse against a child younger than fourteen years of age, including an act constituting the offense of aggravated sexual assault of a child, committed against [complainant] on or about September 1, 2007, and an act constituting the offense of aggravated sexual assault of a child, committed against [complainant] on or about June 30, 2009, and [appellant] was at least seventeen years of age at the time of the commission of each of those acts.

The State filed a notice that it would use extraneous offenses and prior convictions to impeach appellant's credibility under Rules of Evidence 404 and 609 and Articles 37.07 and 38.37 of the Code of Criminal Procedure.  Appellant filed a motion in limine requesting that the State and trial court not mention any of appellant's prior convictions, probated sentences, deferred adjudications, or extraneous or unadjudicated criminal or bad acts in the presence of the jury without first obtaining a ruling from the trial court outside of the presence of the jury.  The trial court did not sign an order on appellant's motion in limine.  However, prior to voir dire, appellant's counsel stated that the trial court "heard [appellant's] motion in limine.  And I don't believe it's on the record, but that part was granted with the caveat that the State would change that one question."  The trial court acknowledged that the State would "rephrase [its] question as opposed to stating that 'it is a known study,' 'studies have shown,' yes, that's correct."

Appellant testified in his defense at trial. On cross-examination, the State elicited the following testimony:

Q. All right, Mr. Bolinger. Let's start with things that we can agree are true.

First of all, on August 9, 1995 . . . you were convicted of misdemeanor theft by check, correct?

A. Yes.

Q. On November 26th of 1996 . . . you were convicted of misdemeanor possession of marijuana, correct?

A. Yes.

Q. Also on November 26th of 1996 . . . you were convicted of the misdemeanor offense of theft, correct?

A. That's correct.

Q. And on June 16th of 1997 . . . you were convicted of the felony offense of burglary of a habitation, correct?

A. That's correct.

. . .

Q. On October 4th of 2010 . . . you were convicted of the misdemeanor offense of assault of a family member, right?

A. That's correct.

Appellant's counsel did not object to the admission of any of appellant's prior convictions and did not immediately request a limiting instruction regarding this testimony. A limiting instruction was included in the jury charge.

On further questioning by his counsel, appellant testified that he "owned up" to his criminal history. In closing argument, appellant's counsel argued that the State "went through [appellant's] criminal history. [Appellant] never denied that. He owned up to his mistakes . . . but he is denying this one. He is fighting this

one." The only prior conviction the State mentioned during closing argument was appellant's conviction for assault of a family member.[1]

The jury found appellant guilty of continuous sexual abuse of a child and sentenced him to life in prison. Immediately after sentencing, the State notified the trial court that it had two victim impact statements, one from the complainant and one from the complainant's mother. Appellant objected to both statements being read because it is "a violation to do any more than just [the complainant] under 56.02 of the Code of Criminal Procedure. . . . forcing [appellant] . . . to sit here and listen to more than one statement is unnecessary, it's cruel, it's unusual punishment." Appellant argued that the rules allow the complainant to give a statement but objected to complainant's mother also giving a statement. The trial court determined that the complainant could give a statement and her mother was permitted to give a statement as well because the complainant was a minor at the time of the offense. Appellant did not file a motion for new trial.

## II.    INEFFECTIVE ASSISTANCE

In his first issue appellant contends that his counsel rendered ineffective assistance by allowing the State to introduce otherwise inadmissible prior convictions to impeach appellant's testimony when counsel failed to object, failing to urge or secure a ruling on a previously filed motion in limine, failing to file a "*Theus* motion," and failing to request a contemporaneous limiting instruction when the State offered the prior convictions. Appellant argues that because credibility was a key issue, trial counsel's deficiency caused him prejudice.

---

[1] Instead, most of the State's closing argument was focused on building the credibility and story of the complainant and attacking appellant's credibility through the testimony of appellant's other alleged victims.

## A.      Legal Principles

To prevail on a claim of ineffective assistance, an appellant must show that (1) counsel's performance was deficient by falling below an objective standard of reasonableness and (2) counsel's deficiency caused the appellant prejudice—there is a probability sufficient to undermine confidence in the outcome that but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *Perez v. State*, 310 S.W.3d 890, 892–93 (Tex. Crim. App. 2010). An appellant must satisfy both prongs by a preponderance of the evidence. *Perez*, 310 S.W.3d at 893.

Generally, a claim of ineffective assistance may not be addressed on direct appeal because the record usually is not sufficient to conclude that counsel's performance was deficient under the first *Strickland* prong. *See Andrews v. State*, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005); *see also Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005) ("A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim."). Ordinarily, trial counsel should be afforded an opportunity to explain counsel's actions "before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). A defendant is not entitled to "errorless or perfect counsel whose competency of representation is to be judged by hindsight." *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006).

"Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation." *Salinas*, 163 S.W.3d at 740. "To overcome the presumption of reasonable professional assistance, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id*. (quotation omitted).

5

It is the "rare case" when an appellant raises a claim of ineffective assistance on direct appeal and the record is sufficient to make a decision on the merits. *Andrews*, 159 S.W.3d at 103. We must presume that trial counsel's performance was adequate unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *State v. Morales*, 253 S.W.3d 686, 696-97 (Tex. Crim. App. 2008) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). "The record must demonstrate that counsel's performance fell below an objective standard of reasonableness as a matter of law, and that no reasonable trial strategy could justify counsel's acts or omissions, regardless of [counsel's] subjective reasoning." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). If there is a potential reasonable trial strategy that counsel could have been pursuing, we cannot conclude that counsel performed deficiently. *See Andrews*, 159 S.W.3d at 103.

## B.     Admissibility of Prior Convictions

Appellant argues that none of his prior convictions were admissible and, therefore, defense counsel could not have had a reasonable trial strategy for failing to object. The State argues that the prior convictions were admissible and that defense counsel had a reasonable trial strategy for failing to object by using "the criminal history evidence elicited by the State in appellant's favor when he successfully argued that appellant pled guilty in each of the prior convictions because he was guilty, but he pled not guilty in [this case] because he had not engaged in any sexual abuse. Appellant's attorney attempted the same strategy in the second trial that had worked in the first, albeit with less success the second time around . . . ."

Admitting to prior convictions can be a matter of sound trial strategy if the prior convictions are admissible. *Donald v. State*, 543 S.W.3d 466, 481 (Tex.

App.—Houston [14th Dist.] 2018, no pet.); *see Huerta v. State*, 359 S.W.3d 887, 891 (Tex. App.—Houston [14th Dist.] 2012, no pet.). It is a common strategy to admit a prior admissible conviction because it "removes the sting from an attack that would otherwise come from the state." *Huerta*, 359 S.W.3d at 891–92.

If a prior conviction is clearly inadmissible, "there can be no reasonable trial strategy for introducing it before the jury." *Id.* at 892 (citing *Robertson v. State*, 187 S.W.3d 475, 485–86 (Tex. Crim. App. 2006)); *see Ex Parte Skelton*, 434 S.W.3d 709, 722 (Tex. App.—San Antonio 2014, pet. ref'd) ("Where a defendant's credibility is central to her defensive strategy, it is not sound trial strategy to allow the introduction of inadmissible evidence that directly impairs the defendant's credibility without objection."). However, it may be strategic to pass over the admission of prejudicial and arguably inadmissible evidence. *Ex Parte Menchaca*, 854 S.W.2d 128, 132 (Tex. Crim. App. 1993) (quoting *Lyons v. McCotter*, 770 F.2d 529, 534 (5th Cir. 1985)). It may also be strategic, for example, if trial counsel *"at that moment* may have reasonably decided that the testimony was not inadmissible." *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999) (performance not deficient on silent record as to why trial counsel failed to object to the State's "artful questions" as the State "doggedly pursued the introduction of inadmissible hearsay"). Thus, we must evaluate whether evidence of the prior convictions was clearly inadmissible or only arguably inadmissible. *See Ex Parte Menchaca*, 854 S.W.2d at 132; *McCook v. State*, 402 S.W.3d 47, 52 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (counsel may strategically decline to object to an "arguably inadmissible prior conviction").

The question of admissibility is determined pursuant to the Rules of Evidence and their interpretative cases. *See* Tex. R. Evid. 609; *Theus v. State*, 845

S.W.2d 874 (Tex. Crim. App. 1992). Under Rule 609, evidence of a prior conviction "must be admitted" if "(1) the crime was a felony or involved moral turpitude, regardless of punishment; (2) the probative value of the evidence outweighs its prejudicial effect to a party; and (3) is it elicited from the witness or established by public record." Tex. R. Evid. 609(a). However, when ten years has "passed since the witness's conviction or release from confinement," such evidence is "admissible only if its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Tex. R. Evid. 609(b). In considering whether the probative value outweighed its prejudicial effect, we review five nonexclusive factors: (1) the impeachment value of the prior crime; (2) the temporal proximity of the past crime to the charged offense and the witness's subsequent history; (3) the similarity between the past crime and the offense being prosecuted; (4) the importance of the defendant's testimony; and (5) the importance of the credibility issue. *Theus*, 845 S.W.2d at 880. The party seeking to introduce the evidence has the burden to demonstrate that the probative value of the conviction outweighs its prejudicial effect. *Id.*

The State impeached appellant with five prior convictions. At the time of trial, the only conviction within the ten-year period of Rule 609 was the 2010 assault of a family member.[2] Because this is a crime of moral turpitude and within the ten-year period provided in Rule 609, evidence of this prior conviction was admissible if its probative value outweighed its prejudicial effect. *See* Tex. R. Evid. 609; *Ludwig v. State*, 969 S.W.2d 22, 30 (Tex. App.—Fort Worth 1998, pet. ref'd) ("[M]isdemeanor assault by a man against a woman is considered a crime of moral turpitude.").

---

[2] The record reveals that the family violence perpetrated in this instance was by appellant against his wife. Appellant testified that he "threw a cake box" at his wife ( the complainant's mother).

Appellant's convictions for theft by check and misdemeanor theft are considered crimes of moral turpitude, and his conviction for burglary was a felony. However, each of these convictions were outside of the ten-year period provided under Rule 609(b). Thus, these three convictions were only admissible if their probative value, supported by specific facts and circumstances, substantially outweighed their prejudicial effect. *See* Tex. R. Evid. 609. Appellant's conviction for misdemeanor possession of marijuana was neither a felony nor crime of moral turpitude and thus is inadmissible under Rule 609.

Because four of the convictions were either a crime of moral turpitude or a felony, we now determine whether those convictions are clearly inadmissible or arguably inadmissible under the *Theus* factors. *See Ex Parte Menchaca*, 854 S.W.2d at 132; *McCook v. State*, 402 S.W.3d 47, 52 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

### 1. Impeachment Value

Impeachment with a prior conviction is an issue of a defendant's credibility. *See* Tex. R. Evid. 609(a); *Pierre v. State*, 2 S.W.3d 439, 442 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). Offenses involving deception are more probative of credibility than offenses involving violence. *See Theus*, 845 S.W.2d at 881; *Pierre*, 2 S.W.3d at 442. Burglary, theft, and theft by deception are all considered crimes involving deception. *See Medina v. State*, 367 S.W.3d 470, 475 (Tex. App.—Texarkana 2012, no pet); *Huerta*, 359 S.W.3d at 892 ("Theft is a crime of moral turpitude involving elements of deception."); *Baca v. State*, 223 S.W.3d 478, 484 (Tex. App.—Amarillo 2006, no pet.) ("Burglary cases are offenses involving deception."). Because the burglary and theft convictions are more probative for purposes of impeachment this factor weighs in favor of admissibility for these convictions. However, the misdemeanor family assault offense, while a crime of

moral turpitude,[3] is a crime of violence. *Dale v. State*, 90 S.W.3d 826, 830 (Tex. App.—San Antonio 2002, pet. ref'd); *see also Guerra v. State*, No. 01-15-00650-CR, 2016 WL 6212999, *10–11 (Tex. App.—Houston [1st Dist.] Oct. 25, 2016, no pet.) (mem. op., not designated for publication) (assault-family-violence against woman is crime of moral turpitude, but in considering *Theus* factors is not a crime of deception). Because the family assault offense is less probative for purposes of impeachment, this factor weighs against admissibility.

## 2. Temporal Proximity and Subsequent History

Evidence of a prior offense is more probative of credibility if the prior offense is recent and the defendant has shown a propensity for breaking the law. *Theus*, 845 S.W.2d at 881; *Pierre*, 2 S.W.3d at 442. We determine whether the offense is recent by reviewing the "temporal proximity of the past crime relative to the charged offense and the witness's subsequent history." *Huerta v. State*, 359 S.W.3d 887, 892 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Appellant's assault family violence conviction occurred on October 4, 2010, and the offense he was charged with in this case occurred between September 2007 and June 2009. Thus, this conviction was recent and weighs in favor of admitting appellant's assault family violence conviction. *See Theus*, 845 S.W.2d at 881 (determining that arson conviction that became final in 1985 had "occurred recently" relative to the "instant offense which happened in February 1990"); *Huerta*, 359 S.W.3d at 892 (defendant's prior convictions in 2005 and 2006 were "near in time to the charged offense" and favored admissibility when the charged offense was committed in 2009). However, appellant's convictions for theft by check, theft,

---

[3] *See Campos v. State*, 458 S.W.3d 120, 149 (Tex. App.—Houston [1st Dist.] 2015) (listing what courts have defined as crimes involving moral turpitude including, dishonesty, deceit, deliberate violence, and matters of "personal morality," as a few examples), *vacated on other grounds*, 466 S.W.3d 181, 182 (Tex. Crim. App. 2015).

and burglary of a habitation occurred in 1995, 1996, and 1997, respectively. These convictions occurred between ten and twelve years prior to the charged offense. Thus, these convictions are not considered recent and fall outside of the ten-year period provided under Rule 609(b). *See* Tex. R. Evid. 609(b). However, a court may consider all relevant specific facts and circumstances, including whether intervening convictions dilute the prejudice of a remote conviction. *Meadows v. State*, 455 S.W.3d 166, 170 (Tex. Crim. App. 2015). This factor weighs against admitting appellant's convictions for theft by check, theft, and burglary.

### 3. Similarity

When a defendant's prior offense and the charged offense are similar, a danger arises that the jury will convict based on a perception of a pattern of past conduct rather than upon the facts of the charged offense. *Theus*, 845 S.W.2d at 881 ("If . . . the past crime and the charged crime are similar, the third factor will militate against admission); *Pierre*, 2 S.W.2d at 443. Appellant's convictions for theft by check, theft, and burglary of a habitation are not similar to the charged offense of continuous sexual abuse of a child. Thus, this factor weighs in favor of admission. Appellant's conviction for assault family violence against the complainant's mother is similar in that both crimes were committed against females and involved violence. However, because appellant's testimony that the assault family violence conviction was a result of his having thrown a cake box at the complainant's mother, the danger that the jury would convict on the perception of past conduct instead of based on the facts of the charged offense was mitigated. *See Theus*, 845 S.W.2d at 881 ("The rationale behind this is that the admission for impeachment purposes of a crime similar to the crime charged presents a situation where the jury would convict on the perception of a past pattern of conduct, instead of on the facts of the charged offense."). *But cf. Pierre*, 2 S.W.3d at 442–43

(reasoning first and third factors "dispositive" because prior convictions involved violence and misdemeanor assaults causing bodily injury, reckless conduct, and terroristic threat against women were similar to the charged crime of sexual assault against a woman). Under the circumstances of this case, this factor weighs in favor of admittance of the prior convictions.

## 4. Importance of Defendant's Testimony and Credibility

The last two factors are related and depend on the nature of the defense asserted. *Theus*, 845 S.W.2d at 881. Where a defendant's defense relies on alibi witnesses, then his credibility is not likely a crucial issue. *Id*. "When the case involves the testimony of only the defendant and State's witnesses, however, the importance of the defendant's credibility escalates, so will the need to allow the State an opportunity to impeach the defendant's credibility. *Id*.

Aside from his own testimony, appellant called three witnesses in his defense. Appellant's defense at trial was that the complainant's mother convinced the complainant to fabricate the alleged sexual assaults in order to obtain custody of mother and appellant's son. Thus, appellant's testimony was important because he denied any inappropriate behavior with the complainant. *See Mireles v. State*, 413 S.W.3d 98, 103 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd), *overruled on other grounds by Meadows v. State*, 455 S.W.3d 166 (Tex. Crim. App. 2015). Although appellant's prior roommates testified that they did not see appellant exhibit any inappropriate behaviors toward the complainant, appellant's defense boiled down to credibility between himself and the complainant. *See id*. Because the need of the State to impeach appellant's credibility was high, this factor weighs in favor of admitting appellant's prior convictions. *Theus*, 845 S.W.2d at 881.

## 5. Weighing the *Theus* Factors

12

While each prior conviction has at least one factor weighing against admission, without further development of the record on appeal through an explanation of trial counsel's actions in failing to object, we cannot say that any of the prior convictions, except for the misdemeanor possession of marijuana discussed below, are *clearly inadmissible* under Rule 609. At most, based on the record here, the prior convictions are only arguably inadmissible. *See Ex Parte Menchaca*, 854 S.W.2d at 132; *McCook*, 402 S.W.3d at 52 (counsel may strategically decline to object to an "arguably inadmissible prior conviction"). Trial counsel reasonably may have believed that there would be at least reasonable disagreement about whether the prior convictions would be admissible under Rule 609. *See Donald*, 543 S.W.3d at 481. Trial counsel is not deficient for allowing the admission of extraneous-offense evidence when the trial court's admission of the evidence would be within the realm of reasonable disagreement. *See id.*; *Parks v. State*, 463 S.W.3d 166, 172 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

## 6. Prejudice

Appellant's conviction for misdemeanor possession of marijuana is neither a felony nor a crime of moral turpitude. *Hernandez v. State*, 976 S.W.2d 753, 755 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd) (discussing State's use of prior misdemeanor possession of marijuana conviction as not being a felony or crime of moral turpitude). Thus, this conviction was clearly inadmissible under Rule 609. Where a prior conviction is clearly inadmissible there can be no reasonable trial strategy for failing to object. *See Huerta*, 359 S.W.3d at 892. Under the second prong of *Strickland*, a defendant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. In the context of deficient performance in the guilt-innocence stage of trial, the question is whether there is a reasonable

probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. This test does not require a defendant to show that "counsel's deficient conduct more likely than not altered the outcome of the case." *Id.* at 693. Rather, a "reasonable probability" of a different outcome is a "probability sufficient to undermine the confidence in the outcome." *Id*. at 694.

In making the prejudice determination, we must consider the totality of the evidence before the jury. *Id*. at 695. "Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect." *Id*. at 695–96. A verdict weakly supported in the record is "more likely to have been affected by errors than one with overwhelming record support." *Id*. at 696.

Considering all of the evidence before the jury, we cannot conclude that this error had a pervasive effect on the inferences to be drawn from the evidence or altered the entire evidentiary picture. Appellant's prior conviction of misdemeanor possession of marijuana is not similar to the crime for which he was on trial. *See Herring v. State*, 147 S.W.3d 390, 396 (Tex. Crim. App. 2004) ("While general criminality is a prohibited inference, it is not a strong or inflammatory an inference as the conformity inference that arises from substantially similar offenses . . . ."). After asking appellant whether he had been convicted of the offense, the State did not bring up this specific offense again in cross-examination or closing argument. Without referencing a specific offense, on re-direct appellant's trial counsel asked appellant whether he had "owned up to" his criminal history as well as his other prior extraneous offenses. In closing argument, appellant's counsel argued that appellant had owned up to his past mistakes, but "he is denying this one. He is fighting this one. That is also character and conformity." Excluding the complained-of offense, the evidence amply supported appellant's conviction. *See*

*McCook v. State*, 402 S.W.3d 47, 52 (Tex. App.—Houston [14th Dist.] pet. ref'd). The complainant detailed the multiple instances of sexual assault committed against her by appellant from the time she was six years old through the age of nine. Her brother testified as to the opportunities appellant had to be alone with the complainant in their home and further corroborated her testimony of being locked in a room alone with appellant when some of the assaults occurred in their home. The complainant's mother testified that during this period the complainant came to her complaining about pain in her vaginal area. We conclude that appellant has failed to show that a reasonable probability exists that, absent trial counsel's error, the jury would have had a reasonable doubt respecting guilt. *See id.*

## C. Limiting Instruction

A contemporaneous limiting instruction prevents the jury from contemplating evidence in an inappropriate manner. *Webb v. State*, 995 S.W.3d 295, 300 (Tex. App.—Houston [14th Dist.] 1999, no pet.). Even when a limiting instruction is given to the jury in the jury charge, as it was in this case, this is less effective than requesting a simultaneous limiting instruction immediately after the evidence is admitted. *See id.* However, '[t]he failure of trial counsel to request a limiting instruction is not, by itself, ineffective assistance." *Straight v. State*, 515 S.W.3d 553, 573 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (citing *Agbogwe v. State*, 414 S.W.3d 820, 837 (Tex. App.—Houston [1st Dist.] 2013, no pet.)). Acknowledging that the best practice is to request a contemporaneous limiting instruction, we cannot say based on this record that trial counsel's failure rendered his representation of appellant unreasonably deficient. *See Webb*, 995 S.W.3d at 301. A reasonable explanation for trial counsel's action in not requesting a limiting instruction is the concern that the instruction may have

highlighted the issue. *Straight*, 515 S.W.3d at 573; *Agbogwe*, 414 S.W.3d at 837; *Ali v. State*, 26 S.W.3d 82 (Tex. App.—Waco 2000, no pet.); *Webb*, 995 S.W.2d at 301; *Abbott v. State*, 726 S.W.2d 644, 649 (Tex. App.—Amarillo 1987, pet. ref'd). Based on the record, appellant has not "overcome the strong presumption that counsel's conduct fell within a wide range of reasonable representation." *Salinas*, 163 S.W.3d at 740.

## D.    Motion in Limine

Appellant complains that counsel should have had a "specific motion in limine filed and ruled upon" with regard to the prior convictions the State sought to use against appellant. The record reflects that appellant's counsel filed a motion in limine regarding prior convictions, but the record does not contain any argument on the motion or the trial court's rulings. Thus, we are not privy to the reasoning provided by trial counsel or the State, or the trial court's ruling. Further, without explanation from trial counsel, we do not know whether the arguments or rulings made off the record support his decision not to pursue the objections to the admission of this evidence. Even if appellant's counsel had obtained a ruling on the record, such ruling is not on the merits and does not preserve error when granted or denied. *Wert v. State*, 383 S.W.3d 747, 757 (Tex. App.—Houston [14th Dist.] 2012, no writ).

Without a more fully developed record, we cannot conclude trial counsel was deficient for failing to obtain a ruling on appellant's motion in limine regarding his prior convictions on the record. As concluded above, it may have been strategic to pass over the admission of prejudicial and arguably inadmissible evidence. *Ex Parte Menchaca*, 854 S.W.2d at 132 (Tex. Crim. App. 1993) (quoting *Lyons v. McCotter*, 770 F.2d 529, 534 (5th Cir. 1985)); *McCook*, 402 S.W.3d at 52. It may also be strategic, for example, if trial counsel *"at that*

16

*moment* may have reasonably decided that the testimony was not inadmissible." *Thompson*, 9 S.W.3d at 814.

## E.     Conclusion

Trial counsel has not been afforded the opportunity to explain his actions, and the record does not demonstrate the alleged ineffectiveness as a matter of law. *See Lopez*, 343 S.W.3d at 143; *Rylander*, 101 S.W.3d at 111. Under the circumstances presented herein, appellant has not rebutted the strong presumption that the decisions of counsel during trial fell within the wide range of reasonable professional assistance. *See Thompson*, 9 S.W.3d at 814. Absent counsel's explanation, the record does not contain sufficient evidence to evaluate the ineffective assistance issue. *See id*. at 814–15. We overrule appellant's first issue.

## III.    GRAND JURY

Appellant argues that in his indictment there is no finding that he probably committed any specific offense and was thus denied his "state-constitutional right to a grand jury indictment on the charge for which he was tried and convicted." Appellant argues that this "omission" denied him of his state-constitutional right to a grand jury indictment on the charge for which he was tried and convicted.

"A defendant has a right to have a grand jury pass upon the question of whether there is probable cause to believe that he committed a particular offense." *Duron v. State*, 956 S.W.2d 547, 550 (Tex. Crim. App. 1997). "The requisite of indictment by grand jury was designed to protect an individual against unjust prosecution without sufficient cause, said indictment informing the accused of the nature of the charges against him so that he may adequately prepare his defense." Tex. Const. art. I, § 10 commentary; *see also Batiste v. State*, 785 S.W.2d 432, 436 (Tex. App.—Corpus Christi–Edinburg 1990, pet. ref'd) (grand jury's purpose is to

protect citizens from commencement of arbitrary or unreasonable felony prosecutions by the State).

"The sufficiency of an indictment is a question of law that is reviewed *de novo*." *Smith v. State*, 297 S.W.3d 260, 267 (Tex. Crim. App. 2009). An indictment is sufficient if it charges the commission of an offense "in ordinary and concise language of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged." Tex. Code Crim. Proc. art. 21.11. Generally, an indictment is legally sufficient if it tracks the language of the statute in question. *Moff*, 154 S.W.3d at 602. "A written instrument is an indictment . . . under the constitution if it accuses someone of a crime with enough clarity and specificity to identify the penal statue under which the State intends to prosecute, even if the instrument is otherwise defective." *Id*.

An indictment serves two functions. First, it is the "written statement of a grand jury accusing a person therein named of some act or omission which, by law, is declared an offense." Tex. Code Crim. Pro. 21.01; *see also Ex Parte Patterson*, 740 S.W.2d 766, 775 (Tex. Crim. App. 1987) ("This provision gives statutory substance to the right conferred in Article I, § 10 of the Texas Constitution to have a grand jury screening before a person may 'be held to answer for a criminal offense' of the magnitude of felony."), *overruled on other grounds by Ex Parte Beck*, 769 S.W.2d 525 (Tex. Crim. App. 1989). Second, it is the State's primary pleading in a felony criminal action. *Ex Parte Patterson*, 740 S.W.3d at 775.

The grand jury does not necessarily need to pass on matters that are purely evidentiary. *See Flowers v. State*, 815 S.W.2d 724, 729 (Tex. Crim. App. 1991) (because statutory definition added to amended indictment was not an "element of the offense" and did not "describe an act or omission," the statutory definition did

not need to be included in the indictment); *Berg v. State*, 747 S.W.2d 800, 809 (Tex. Crim. App. 1984) (pleading evidentiary matters "which are surplusage . . . give the accused more notice than is constitutionally required."). Under section 21.02, it is the commission of two or more acts of sexual abuse over the specified period that is the actus reus element of the offense as to which the jurors must be unanimous in order to convict. *Jacobsen v. State*, 325 S.W.3d 733, 736 (Tex. App.—Austin 2010, no pet.). "The individual acts of sexual abuse that make up this pattern of behavior or series of acts are not themselves elements of the offense, but are merely evidentiary facts, the manner and means by which the actus reus element is committed." *Id.*

Appellant was indicted and convicted of continuous sexual abuse of a child. *See* Tex. Pen. Code § 21.02. "A person commits an offense if: (1) during a period that is 30 or more days in duration, the person commits two or more *acts of sexual abuse* . . . ." *Id*. § 21.02(a) (emphasis added). This section defines an "act of sexual abuse" as "any act that is a violation of one or more" penal laws enumerated within the statute. *Id*. § 21.02(c). Appellant's indictment charged that appellant had committed "at least two acts of sexual abuse . . . including an act constituting the offense of aggravated sexual assault of a child" against the complainant between January 5, 2006 and June 30, 2009. *See id*. § 21.02(c)(4). The probable cause affidavit attached to the complaint and submitted by an officer with the Harris County Sherriff's Department further detailed the aggravated sexual assaults alleged to have been committed by appellant against complainant during the time referenced in the indictment.[4]

---

[4] The probable cause affidavit enumerated several acts of aggravated sexual assault of a child, including the following:

> [Appellant] . . . committed the offense of aggravated sexual assault of a child by penetrating his sexual organ, penis into the sexual organ, vagina of the

19

The indictment tracked the language of the statute in question. *See Moff*, 154 S.W.3d at 602. Because the individual acts of sexual abuse that make up the pattern of behavior or series of acts are not themselves elements of the offense, but are merely evidentiary facts, it is not necessary that the grand jury pass on them. *See Flowers*, 815 S.W.2d at 729; *Jacobsen*, 325 S.W.3d at 736.

We overrule appellant's second issue.

## IV. CRUEL AND UNUSUAL PUNISHMENT

Appellant's third issue is that the trial court "visited cruel and unusual punishment" upon him by allowing improper victim allocution. After punishment had been assessed and sentenced pronounced, over objection by trial counsel that such allocution was cruel and unusual, the trial court allowed the complainant and her mother to appear and present to the defendant their statements about the effects of appellant's offense on the complainant.

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause depends upon the claim at issue . . . ." *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992). "The general requirement that an Eighth Amendment claimant allege and prove the unnecessary and wanton infliction of pain should . . . be applied with due regard for differences in the kind of conduct against which an Eighth Amendment objection is lodged." *Whitley v. Albers*, 475 U.S. 312, (1986).

---

complainant. . . . [Complainant] stated that [appellant] had began (sic) touching her breasts and genitals with his hands when she was six years old . . . and eventually began penetrating her vagina with his hands and penis several times a week. . . . complainant disclosed that [appellant] put his finger and his private part (penis) in her private (vagina) several times. . . . the last time he penetrated her vagina was around June after her fourth grade year (approx. 06/30/2009).

Article 42.03 allows "a victim, . . . or guardian of a victim, . . . to appear in person to present the court and the defendant a statement of the person's views about the offense, the defendant, and the effect of the offense on the victim." Tex. Code Crim. Pro. art. 42.03(b). Questions may not be directed at the defendant while making the statement. *Id*.

Appellant's sole argument is that having to listen to his ex-wife give a victim statement after their contentious divorce and custody battle and after receiving a life sentence without parole was cruel and unusual punishment in violation of the Eighth Amendment, citing to *Furman v. Georgia*, 408 U.S. 238 (1972). In *Furman*, the Supreme Court reversed and remanded three cases where death sentences were imposed. *Id*. at 239–40. In his concurring opinion, Justice Douglas stated that the "primary principle is that a punishment must not be so severe as to be degrading to the dignity of human beings." *Id*. at 271 (Douglas, J., concurring). In this case there is no record from which we can assess whether the statement rose to the level of "degrading to the dignity of human beings." *See id*. In *Payne v. Tennessee*, the Supreme Court concluded that the Eighth Amendment presents no *per se* bar to presentation of a victim impact statement prior to sentencing of the defendant. 501 U.S. 808, 824–25 (1991) ("The States remain free, in capital cases, as well as others, to devise new procedures and new remedies to meet felt needs. Victim impact evidence is simply another form or method of informing the sentencing authority about the specific harm caused by the crime in question, evidence of a general type long considered by sentencing authorities."). The fact that the victim statement was from appellant's ex-wife and that they had a tumultuous relationship does not render the statement from her cruel and unusual *per se*.[5]

---

[5] Appellant also notes that the trial court erred in admitting more than one victim

21

We overrule appellant's third issue.

## V.    CONCLUSION

Having overruled all of appellant's issues, we affirm the trial court's judgment.


/s/    Ken Wise
Justice


Panel consists of Justices Wise, Jewell, and Poissant.

Do Not Publish — TEX. R. APP. P. 47.2(b).

---

statement under Article 42.03 but fails to make any argument as to what harm such alleged error caused.    As a result, to the extent that appellant tries to raise this issue on appeal it is inadequately briefed. *See* Tex. R. App. P. 38.1(i).